UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTOPHER McALEER,                    )
                                        )
            Plaintiff,                  )    CIVIL ACTION NO.
                                        )    12-10839-DPW
v.                                      )
                                        )
PRUDENTIAL INSURANCE COMPANY            )
OF AMERICA, PRUDENTIAL ANNUITIES,       )
INC., and ERIC FAUTH,                   )
                                        )
            Defendants.                 )
                                        )

MEMORANDUM AND ORDER
February 28, 2013

        Plaintiff Christopher McAleer brings this action against his
former employer alleging age discrimination and failure to pay
sales commissions.  He has also amended his complaint to bring
common law claims for tortious interference with advantageous
relations and breach of the covenant of good faith and fair
dealing.  Defendant Prudential Insurance Company of America moves
to dismiss, arguing that the discrimination claims are time
barred, that the Wage Act does not cover the commissions, and
that the state law claims are duplicative and therefore
preempted.

        I will grant Prudential's motion to dismiss the
discrimination claims because McAleer did not file his complaint
within the applicable statute of limitations.  However, I will
deny Prudential's motion with respect McAleer's claims regarding

Prudential's failure to pay sales commissions under the Wage Act and under the common law.

## I.   BACKGROUND

### A.   *Facts*

In 2002, Prudential acquired the company that employed Christopher McAleer, and McAleer became a Prudential employee. Prudential promoted McAleer to New England Division Sales Manager in 2005, responsible for territory ranging from Maine to Pennsylvania and West Virginia, but in 2006 Prudential demoted him to Regional Sales Manager responsible only for New Hampshire, Maine, and Massachusetts.  He was 59 years old when Prudential demoted him and replaced him in the New England Division Sales Manager position with Eric Fauth, who was approximately 40-years-old.

In 2008 and 2009, McAleer's sales figures started to drop. For the first time, he received evaluations reflecting that he failed to meet expectations.  McAleer alleges that his diminished sales figured resulted predominantly from the fact that Prudential twice delayed approval of competitive annuity products for sale in Massachusetts - which regularly makes up 80-85% of Prudential's total business in New England - despite having approved them for sale in the rest of the country months earlier. He approached his supervisor, Fauth, and Fauth's supervisor, Rodney Allain, and asked them to adjust his sales targets to

reflect the months when he did not have a competitive product to sell.  They declined to adjust his targets and, on June 24, 2009, Prudential fired McAleer for failure to meet evaluation expectations and sales goals.  Although Prudential continued to pay McAleer his base salary until the effective date of his termination, December 21, 2009, it stopped paying his commissions after his last day in the office, July 24, 2009.

McAleer contends the delays in approving competitive products for sale in Massachusetts and his supervisors' refusal to adjust his target goals were a scheme to force him out motivated by age discrimination.  McAleer was 62 years old on the effective date of his termination.  Both Allain and Fauth were approximately 43 years old.[1]  McAleer alleges that Prudential hired two younger employees to replace him after he was fired, though he does not specify their ages.  He further alleges that while he worked at Prudential, his supervisors, Fauth, Allain, and the Broker Deal Sales Manager, Rick Singmaster, consistently made ageist comments such as "you're too old for this," "this is a young man's job," and "it's clear from your condition that you are getting too old to do this job."

The Human Resources division at Prudential investigated the claims of age discrimination, but informed McAleer on January 29,

---

[1] The Complaint alleges that Allain and Fauth were approximately 40 years old in 2006, making them approximately 43 in 2009.

2010 - five months after he first lodged his claim and one month after the effective date of his termination - that it found no evidence of discrimination.

## B.    *Procedural History*

Fauth issued a final warning letter regarding sales goals to McAleer on May 24, 2009, informing him that he had failed to meet his sales targets and that Prudential would terminate his employment if his sales figures did not improve within 30 days. McAleer first raised his concerns regarding age discrimination to Prudential's Human Resources department about two weeks later, on June 8, 2009.  Prudential informed McAleer of his termination by a letter, dated July 24, 2009.  This was also his last day in the office.  He was required to return his ID badge, security key card, and any company property, such as computer equipment.  The letter noted that McAleer had accrued 58 days of unused paid time off, and therefore calculated that the effective date of his termination would be October 13, 2009.  McAleer again notified the Human Resources department of his concerns regarding age discrimination about one week later, on August 1, 2009.  After his last day in the office, and on the first day he began to be paid for his unused vacation days, McAleer requested and received short-term disability leave lasting 12 weeks, until October 17, 2009.  Because McAleer did not spend his unused vacation time while on disability leave, this extended his effective

4

termination date from October 13, 2009 until December 21, 2009.
Prudential issued McAleer a new termination letter, superceding
and replacing the previous letter, and memorializing the new
effective termination date.

Near the end of his disability leave, on September 30, 2009,
McAleer filed a complaint with the Fair Labor Division of the
Massachusetts Attorney General's Office demanding payment of
commissions not paid since his last day in the office.  About one
year later, on August 31, 2010, he filed claims with both the
Massachusetts Commission Against Discrimination ("MCAD") and the
Equal Employment Opportunity Commission ("EEOC").

MCAD issued McAleer a right-to-sue letter just over one year
later, on September 16, 2011.  EEOC issued him a right-to-sue
letter on November 3, 2011, one year and three months after
McAleer filed his claim.  Both McAleer and his counsel allege
that neither received the letter from the EEOC until McAleer's
counsel contacted the EEOC on February 28, 2012 when the EEOC
faxed a copy of the November 3, 2011 letter to McAleer's counsel.

McAleer filed this action on May 9, 2012, 180 days after the
EEOC issued its right-to-sue letter. That was 71 days after
McAleer and his counsel received the right-to-sue letter by fax
from the EEOC.

McAleer filed an Amended Complaint, now the operative pleading in this case, on October 1, 2012 and Prudential moved to dismiss the Amended Complaint on October 22, 2012.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  "'Naked assertion[s]' devoid of 'further factual enhancement'" do not constitute adequate pleading.  *Id.* (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 557 (2007)).  All well-pleaded factual allegations in the complaint must be taken as true and all reasonable inferences must be drawn in the pleader's favor.  *SEC* v. *Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) (en banc).  Unless the alleged facts push a claim "across the line from conceivable to plausible," the complaint is subject to dismissal.  *Iqbal*, 556 U.S. at 680.

## III. DISCUSSION

### A. *Statute of Limitations*

Title VII requires plaintiffs to file discrimination claims with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  In Massachusetts, however, a plaintiff may file an action no later than 300 days from the date of the alleged

6

discrimination.  M.G.L. 151B § 5; *see also Thomas* v. *Eastman Kodak Co.*, 183 F.3d 38, 47 n.5 (1st Cir. 1999).  McAleer filed his claim with the EEOC on August 31, 2010.  Therefore, his action falls outside of the statute of limitations if his claim accrued before November 4, 2009.

An employment discrimination claim accrues when the employee has unequivocal notice of some harm resulting from an allegedly discriminatory act.  *See Eastman Kodak*, 183 F.3d at 50 ("[T]he statute of limitations is triggered only if . . . 'some tangible effects of the discrimination were apparent to the plaintiff,' i.e. if 'the plaintiff is aware that he will in fact be injured by the challenged practice.'" (quoting *Johnson* v. *General Elec.*, 840 F.3d 132, 136-137 (1st Cir. 1988)); *Angeles-Sanchez* v. *Alvarado*, No. 92-2165, 1993 WL 147472, *3 (1st Cir. May 7, 1993) (holding that the statute of limitations begins to run when termination is "unequivocal, and communicated in a manner such that no reasonable person could think there might be a retreat or change in position prior to the termination" (internal quotations omitted)).

The focus of the parties' dispute is whether Prudential's July 24, 2009 termination letter was unequivocal.  Prudential contends that the letter was unequivocal notice of termination because McAleer was asked to leave the office and turn in his ID and any other office property, and because any extensions of the

effective date of his termination were purely administrative and did not affect whether he would be employed by the company going forward.  Prudential therefore reasons that McAleer's claim accrued on that date, and that his claims must be dismissed because he did not file his claim within 300 days of July 24, 2009.  McAleer, by contrast, argues that because Prudential's November 4, 2009 letter "replace[d] and supercede[d]" the July 24, 2009 letter and reflects the extension of his effective termination date, he did not have unequivocal notice until November 4, 2009.  He reasons that because he filed his claim exactly 300 days after this second letter, his claim is timely. McAleer's position is untenable for a number of reasons.

First and foremost, the existence of a second letter does not change when McAleer had notice of his termination.  The Supreme Court has made clear that the statute of limitations begins to run at the time of the allegedly discriminatory decision, even if the plaintiff's employment continues, and the consequences of the allegedly discriminatory act – in this case termination – do not occur until later.  *Delaware State College v. Ricks*, 449 U.S. 250, 257-58 (1980).  Prudential notified McAleer of his termination on July 24, 2009.  The fact that the final consequences of that decision came later does not change when McAleer learned of the decision.  Nor does a confirmatory,

superceding letter somehow wipe away more than three months of McAleer's knowledge that Prudential had fired him.

Second, McAleer's contention that a reasonable person in his position would have believed that Prudential had rescinded its decision to terminate him because he "remained employed for more than two additional months after the initial purported October 13, 2009 termination date" is not plausible.  McAleer does not allege that he returned to the office, got a new ID, did any work for Prudential, or even had any discussions with Prudential about returning to some job there.  Absent such allegations, the only reasonable interpretation is that Prudential merely adjusted the effective date of his termination to account for his short-term disability leave, not that Prudential had reconsidered his termination, and certainly not that it had rescinded his termination.

In fact, this case is an even clearer instance of unequivocal notice than either of the two cases McAleer attempts to distinguish: *Ricks*, 449 U.S. 250; *Eastman Kodak*, 183 F.3d 38.  Both *Ricks* and *Eastman Kodak* make clear that formal internal company procedures for collateral review or reconsideration of an employment decision do not toll the statute of limitations.  *See Ricks*, 449 U.S. at 261; *Eastman Kodak*, 183 F.3d at 52.  In *Ricks*, for example, the Supreme Court held that an employer's affirmative indication of a willingness to change its decision if

9

it found the plaintiff's grievance meritorious "does not suggest
that the earlier decision was in any respect tentative." *Ricks*
449 U.S. at 261.   Accordingly, McAleer's contention that
Prudential *implied* it might be reconsidering his termination –
because his employment was extended past the initially stated
October 13, 2009 date as a purely formalistic matter when he
requested disability leave – does not and cannot suggest that the
initial decision was equivocal or tentative.

Finally, McAleer relies on a line of caselaw that does not
apply to the facts alleged in this case to support his erroneous
contention that Prudential's July 24, 2009 letter was merely
equivocal notice of termination.   *Svensson* v. *Putnam Inv. LLC*,
558 F. Supp. 2d 136 (D. Mass. 2008); *Wheatley* v. *AT&T,* 636 N.E.2d
265 (Mass. 1994); *Angeles-Sanchez* v. *Alvarado*, 993 F.2d 1530
(Table) (1st Cir. 1993).

In both *Svensson* and *Wheatley*, the courts found notice
equivocal relying on the rule that  "[w]hen . . . the notice
establishes a transition period during which the employee may
seek other opportunities within the company prior to termination,
or contains a promise to be reinstated to a specific position in
the future, courts have deemed the notice equivocal." *Svensson*,
558 F. Supp. 2d at 142.   In *Svensson*, at the time the employer
gave the employee notice, it also "promised her that she would be
considered for Portfolio Management positions as they became

available." *Id.* at 143.  Similarly, in *Wheatley,* the court held
that "[b]ecause AT&T held out the possibility of other employment
within the company, the letter . . . did not trigger the . . .
statute of limitations." *Wheatley*, 636 N.E.2d at 398.  That
reasoning is inapplicable here.  If a company offers an employee
another job or the possibility of future reinstatement, the
employee is unlikely to file an action for discrimination for
fear that filing such an action would prejudice any
reconsideration of the employer's decision.  *See Svensson*, 558 F.
Supp. 2d at 142; *Wheatley*, 636 N.E.2d at 268 n.8.  However, that
concern does not extend to the facts alleged in this case.
McAleer does not allege that Prudential offered him the
possibility of another position at the company or that he might
be reinstated at some future time.  The July 24, 2009 letter from
Prudential terminating McAleer was absolute, without offering the
possibility of reinstatement or transfer to another position.
McAleer had no reason to fear that filing his claim would somehow
prejudice a possible return to Prudential.

His citation to *Angeles-Sanchez* is equally unavailing.  That
case involved an employee resignation resulting from an allegedly
hostile and discriminatory employment atmosphere.  The First
Circuit held that

> although Sanchez submitted her resignation on July 2,
> she reserved 19 days for it to take effect.  This
> waiting period reasonably could indicate, as Sanchez
> avers, that if [her employer] ended the hostile

atmosphere forcing her departure, she might rescind her resignation.

*Angeles-Sanchez*, 1993 WL 147472, at *3. The July 24, 2009 termination letter to McAleer contained no such waiting period during which Prudential might have changed its decision. It merely informed him that he was entitled to payment for his unused vacation time. The only letter in this case which might be considered analogous to the plaintiff's letter in *Angeles-Sanchez* would be Fauth's May 24, 2009 final warning letter, which informed McAleer that Prudential would terminate his employment if his sales figures did not improve in the next 30 days. That May letter - not the July 24, 2009 letter - is the one that afforded a waiting period similar to the one discussed in *Angeles-Sanchez* that might have constituted equivocal notice of termination. The July letter took effect immediately and with no waiting period, as indicated in the letter itself, stating "[t]oday will be your last day in the office." Thus, the waiting period reasoning that the First Circuit relied on in *Angeles-Sanchez* to find Sanchez's resignation equivocal cannot logically extend to support a similar finding with respect to Prudential's July 24, 2009 letter.

McAleer failed to file his claims with the EEOC within the limitations period, and I must therefore dismiss Counts I-V of the Amended Complaint (the discrimination claims) with prejudice because they are untimely.

12

Because I find McAleer did not initiate this action within the required 300 day statute of limitations, I do not consider the alternative argument that his failure to sue within 90 days of receipt of a right-to-sue letter separately bars this action. Consequently, I also do not address McAleer's equitable tolling argument based upon the dispute about the date of the actual receipt of the EEOC right-to-sue letter.

## B. Massachusetts Wage Act

The Massachusetts Wage Act was enacted to prevent an employer from unreasonably detaining an employee's wages.  *See Am. Mut. Liab. Ins. Co.* v. *Comm'r of Labor & Indus.*, 163 N.E.2d 19, 21 (Mass. 1959); *Boston Police Patrolmen's Ass'n* v. *Boston*, 761 N.E.2d 479, 481 (Mass. 2002).  It provides a cause of action for loss of wages and other benefits.  *See* M.G.L. 149 § 150; *Okerman* v. *VA Software Corp.*, 871 N.E.2d 1117, 1121 n.6 (Mass. App. Ct. 2007).  It applies "so far as apt, to the payment of commissions when the amount of such commissions less allowable or authorized deductions, has been *definitely determined* and has become *due and payable* to such employee . . ."[2]  M.G.L. 149 § 148

[2] Although certain courts have imposed additional restrictions on the application of the Wage Act to commissions, *see Cumpata* v. *Blue Cross Blue Shield of Mass.*, 113 F. Supp. 2d 164, 168 (D. Mass. 2000)(holding that the Wage Act does not apply to commissions "above and beyond" plaintiff's base salary); *Com.* v. *Savage*, 583 N.E.2d 276, 278 (Mass. App. Ct. 1991), more recent decisions of the Massachusetts state appellate courts have rejected such additional restrictions.  *See Wiedman* v. *The Bradford Group, Inc.*, 831 N.E.2d 304, 312 (Mass. 2005); *Okerman*

(emphasis added).  McAleer seeks to recover unpaid sales commissions he earned while employed with Prudential but which Prudential has not paid since his last day in the office, July 24, 2009.  Prudential argues that the Wage Act does not apply to these commissions because Prudential retained discretion to interpret the commission plan and therefore the commissions were neither 'definitely determined" nor "due and payable."  However, I find that McAleer has pled facts sufficient to state a claim under the Wage Act.

### 1. Definitely Determined

In order to be "definitely determined," a commission must be "arithmetically determinable."  *Wiedman*, 831 N.E.2d at 312.  The Annuities Regional Coordinator Sales Compensation Plan, which governs McAleer's compensation, states that the "commission awarded is determined by comparing cumulative gross sales to a Sales Commission table" attached as an appendix to the plan, and updated periodically.  Although McAleer does not allege the precise amount of the cumulative gross sales he brought in, he alleges approximate amounts and further alleges that Prudential precisely tracks these sales such that he can seek production of

---

v. *VA Software Corp.*, 871 N.E.2d 1117, 1122 (Mass. App. Ct. 2005) ("[T]he language of the wage act . . . is restricted in its application *only* by the requirements that the commissions be "definitely determined" and "due and payable." (emphasis added)). I am, of course, bound by decisions of the Massachusetts Supreme Judicial Court.  *See Moores* v. *Greenberg*, 834 F.2d 1105, 1107 n.3 (1st Cir. 1987)

the precise figures in discovery.  Between his allegations
regarding the commission plan and his allegations regarding the
cumulative gross sales on which the commissions are calculated,
McAleer has pled sufficient facts to show that the amount of his
unpaid commissions is "arithmetically determinable" and therefore
"definitely determined" under the meaning of the Wage Act.  *See
Okerman*, 872 N.E.2d at 1124-25 ("Okerman set out in his complaint
the applicable commission plan . . . detailing the ways in which
his commissions were calculated as a percentage of revenue.  He
also set out the revenue he brought into VA . . . . Okerman
therefore pleaded facts which, if proved true at trial, would
satisfy the requirement that commissions be 'arithmetically
determinable.'"); *see also Wiedman*, 831 N.E.2d at 312.

Prudential argues that because the plan affords it complete
discretion for interpretation and payment calculation – including
discretion to determine whether McAleer was eligible to receive
commissions as an active employee in good standing – McAleer's
commissions cannot be arithmetically determinable.  This argument
fails.

Discretion prevents commissions from being definitely
determined if the employer is under no obligation to award them.
*See Weems* v. *Citigroup Inc.*, 900 N.E.2d 89, 94 (Mass. 2009)
(holding that the "operative fact" in finding discretionary
bonuses not to be definitely determined is "not [that] they are

15

labeled bonuses, but [that] the employers are, apparently, under no obligation to award them"). While Prudential exercises substantial discretion in the *administration* of the commission plan, the commissions are not *themselves* discretionary. The plan does not afford Prudential carte blanche to withhold or modify commission payments for any reason. It simply affords discretion over factual determinations, calculations, and eligibility. To interpret the discretion under the plan as broadly as Prudential would have it would render the plan meaningless.

Under the plan, Prudential retains discretion to determine eligibility, and to withhold payments from an employee it deems ineligible or an employee who has been terminated for cause, including poor performance. Prudential therefore argues that because it terminated McAleer and found him ineligible to receive commissions, his claims cannot be definitely determined. However, McAleer challenges the legality of his termination itself. If, indeed, his termination was the result of unlawful discrimination and not poor performance, Prudential may not avoid liability under the Wage Act merely by asserting retention of discretion not to award commissions.

However, the commission plan affords Prudential the power to "adjust the Sales Incentive to reflect the interruption of employment" for employees "who have been on a paid or unpaid leave of absence for any reason, including but not limited to

short-term disability."  McAleer does not challenge the legality

of his disability leave or in any way connect it with the alleged

age discrimination.  Therefore, Prudential arguably has the

discretion to adjust commissions to account for the time McAleer

was out on disability.  The plan specifically provides, however,

that "[o]ther Incentive Payments that will become due during a

leave of absence will be paid as earned," so Prudential does not

have discretion to withhold commissions earned before McAleer

began his disability leave, but that became due during his leave.

Since the commissions at issue are alleged to have been earned

before the period of disability, the retention of discretion on

the basis of a later disability does not prevent the commissions

in this case from being definitely determined.

### 2. Due and Payable

Commissions are due and payable when "any contingencies

relating to their entitlement have occurred." *Sterling Research,*

*Inc.* v. *Pietrobono*, No. 02-40150, 2005 WL 3116758, at *11 (D.

Mass. Nov. 21, 2005); *Micciche* v. *N.R.I. Data & Bus. Prod., Inc.*,

No. 09-11661, 2011 WL 4479849, at *6 (D. Mass. Sept. 27, 2011).

The Annuities Regional Coordinator Sales Compensation Plan does

not specify precisely what contingencies must be satisfied to

entitle McAleer to commission payments.  It says only that "[a]

percentage of variable annuities gross sales will be awarded

monthly based on cumulative gross sales results."  The Complaint

17

alleges that Prudential would delay payment on commissions earned until Prudential received the payment of the premium.

When a compensation plan specifically sets out the contingencies an employee must meet to earn a commission, courts apply the terms of the plan, *see e.g., Watch Hill Partners* v. *Barthel*, 338 F. Supp. 2d 306, 307-08 (D.R.I. 2004), however, when the plan does not specify, courts generally consider that the employee earns the commission and it becomes due and payable when the employee closes the sale, even if there is a delay in actual payment on the sale. *See Micciche*, 2011 WL 4479849, at *7; *Sheedy* v. *Lehman Bros. Holdings Inc.*, No. 11-11456, 2011 WL 5519909, at *4 (D. Mass. Nov. 14, 2011); *DeSantis* v. *Commonwealth Energy Sys.*, 864 N.E.2d 1211, 1219 n.12 (Mass. App. Ct. 2007).

In *Micciche*, the court found commissions due and payable where the plaintiff closed the sales with a customer while he was still employed with the defendant company, but was terminated before the customer actually remitted payment. *See Micciche,* 2011 WL 4479849, at *3, *7. The court specifically stated, "[t]he significant delay in the remission of payment is attributable to the evaluation, and is not something for which a commission should be docked." *Id.* at *3 n.7. Similarly, in *Sheedy*, where the incentive compensation was contingent on employment with the defendant employer for five years, but the employer went bankrupt during that five-year period, the court

held that the plaintiff had earned a proportion of the incentive payment equal to the proportion of the five-year period she had worked before the bankruptcy and termination. *Sheedy*, 2011 WL 5519909, at *4.

Here, taking the facts in the light most favorable to the plaintiff, any sales McAleer closed while employed at Prudential may have been earned, and could have been due and payable, at the time of the closing, even if Prudential did not receive the premiums until after it terminated McAleer's employment. McAleer does not claim that he should be paid for commissions "in his pipeline" but not closed before his termination. *See Scalli* v. *Citizens Fin. Grp.*, *Inc.*, No. 03-12413, 2006 WL 1581625, at *14 (D. Mass. Feb. 28, 2006). He seeks only those commissions he earned while he worked at Prudential.

Prudential argues that it was under no obligation to pay commissions after July 24, 2009 because that was McAleer's last day in the office, after which he was not an "active" employee, citing *Perry* v. *New England Bus. Serv., Inc.* for the proposition that non-"active" employees are not elligible for commission payments and therefore that no such payments could have been due and payable. This argument fails for at least three reasons.

First, and most fundamentally, *Perry* has absolutely no bearing on the Wage Act or its meaning. In *Perry,* the First Circuit addressed an ERISA case with no mention of - or

implications for - the Massachusetts Wage Act, and it based its determination that the employee was not "active" on the definition of an "active" employee in the employee's particular ERISA benefits plan, which is not similar to any language in the compensation plan at issue in this case. *See Perry* v. *New Endland Bus. Serv., Inc.*, 347 F.3d 343 (1st Cir. 2003).

Second, Prudential's argument that McAleer was not an active employee between July 24, 2009, his last day in the office, and December 21, 2009, the effective date of his termination, is belied by both of McAleer's termination letters, which state "[y]ou will continue your health and/or life insurance coverage *as an active employee* until your retirement date" (emphasis added). Thus, at this stage, McAleer has pled facts, which, taken in the light most favorable to him and drawing all reasonable inferences in his favor, could support a reasonable finding that he was still an "active" employee, as Prudential understood that term, until the effective date of his termination.

Finally, even if McAleer was not an active employee between July 24, 2009 and December 21, 2009, Prudential has not provided any justification to find that this precludes commissions from becoming due and payable if he earned them during the period of his indisputably active employment before July 24, 2009.

Therefore, I cannot find, as a matter of law, that McAleer's Wage Act allegations fail to state a claim.

## D. *Exclusive Remedy*

Prudential argues that McAleer's common law claims are improper because they are entirely duplicative of his discrimination claim. It argues that under Massachusetts law, M.G.L. 151B constitutes the exclusive remedy for discrimination, requiring dismissal of any common law claims based on the same set of facts. In support of this proposition, Prudential identifies three cases. *See Mouradian* v. *General Electric*, 503 N.E.2d 1318 (Mass. App. Ct. 1987); *Melly* v. *Gillette Corp.*, 475 N.E.2d 1227 (Mass. App. Ct. 1985); *Comey* v. *Hill*, 438 N.E.2d 811 (Mass. 1982). None of these cases stands for the proposition that M.G.L. 151B precludes or preempts all traditional tort claims, even if based on many of the same facts. Furthermore, McAleer's common law claims do not entirely overlap his discrimination claims. I therefore deny Prudential's motion to dismiss the common law claims.

*Mouradian* and *Melly* refused to create a common law cause of action for wrongful dismissal of an at-will employee based on the public policy against age discrimination. *Mouradian*, 503 N.E.2d at 1320 ("As did the plaintiff in *Melley*, Mouradian asks us to recognize a new, and possibly duplicative, common law action based on violation of public policy . . . expressed in c 151B.");

*Melly*, 475 N.E.2d at 1228 ("The difficulty with Melley's argument is that a finding that certain conduct contravenes public policy does not, in itself, warrant the creation of a new common law remedy for wrongful dismissal by an employer."). *Mouradian* went further, dismissing various common law claims including a claim for breach of the covenant of good faith and fair dealing, and clarifying that,

> [i]t is of no significance that Mouradian's claims are framed in terms of several different violations of express and implied contract and separate torts because they all have a common denominator – a supposed entitlement to recover on common law principles for alleged wrongful termination because of age.

*Mouradian*, 503 N.E.2d at 1320.  However, this holding applies only when the common law claims are mere proxies for wrongful termination, where "[t]he plaintiff . . . has no common law right unless [the court] create[s] one now." *Melley*, 475 N.E.2d at 1229.  Both *Mouradian* and *Melley* expressly acknowledge that, despite M.G.L. 151B, a plaintiff "may have a claim against his employer on some other *recognized* common law ground." *Mouradian*, 503 N.E.2d at 1320 (emphasis added); *see also Melley*, 475 N.E.2d at 1229 ("[T]he statute broadens existing remedies rather than requiring resort to it as exclusive of all other remedies." (quoting *Comey*, 438 N.E.2d at 817)).  In other words, it is clear that "c. 151B was not meant to be an exclusive remedy." *Comey*, 438 N.E.2d at 817.  The statute itself provides, in relevant part, that "nothing contained in this chapter shall be deemed to

22

repeal any provision of any other law of this commonwealth relating to discrimination."  M.G.L. 151B § 9.  Because 151B expressly provides that it does not repeal "any other law of this commonwealth," which must include the common law developed by the courts of the Commonwealth, I will not interpret it as preventing a plaintiff from pursuing claims based on existing common law causes of action.  Therefore, a court may entertain common law claims, even if they are based on age discrimination, so long as they seek to remedy some tortious act other than a wrongful termination.

In *Mouradian*, the plaintiff conceded that he could not predicate his common law claims on any adverse action other than wrongful termination based on age discrimination.  *Mouradian*, 503 N.E.2d at 1319-20.  The "common denominator" for each of his claims was "a supposed entitlement to recover on common law principles for alleged wrongful termination because of age."  *Id.* at 1320.  By contrast, McAleer does not simply disguise a wrongful termination claim as other common law claims.  Although the wrongful conduct and bad faith he alleges is based on age discrimination, the substance of his tortitous interference and breach of the covenant of good faith and fair dealing claims are predicated on Prudential withholding commissions he earned while he was still employed there, not wrongful dismissal.

Under the *Fortune* doctrine, an employer who terminates an employee "without good cause" in order to deprive him of commissions may violate the covenant of good faith and fair dealing.  *Krause* v. *UPS Supply Chain Solutions, Inc.*, No. 08-cv-10237, 2009 WL 3578601, at *14 (D. Mass. Oct. 28, 2009).  In *Krause*, I held that a plaintiff may state a claim for breach of the implied covenant of good faith and fair dealing based on improper refusal to pay commissions in violation of the Wage Act where the plaintiff sought to prove that her termination was "without good cause" by showing discrimination.  *Id.*  The same may be said of McAleer's claim.

## IV.  CONCLUSION

For the foregoing reasons, I grant Defendant's Motion to Dismiss the Amended Complaint (Dkt. 26) with prejudice with respect to Counts I-V, alleging age discrimination, but deny the motion with respect to Count VI, alleging violation of the Wage Act, Count VII alleging breach of the covenant of good faith and fair dealing, and Count VII, alleging tortious interference with advantageous relations.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT